IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIONEL HUGHES | : |
| 337 Alexandria Drive | : CIVIL TRIAL DIVISION |
| Macon, GA 31210 | : |
| Plaintiff, | : JURY TRIAL DEMANDED |
| | |
| vs. | : NO. |
| | |
| ARONIMINK GOLF CLUB | : |
| 3600 St. Davids Road | : |
| Newtown Square, PA 19073 | : |
| Defendant | : |

## CIVIL ACTION COMPLAINT

### PARTIES

1. Plaintiff, Lionel Hughes ("Hughes"), is an adult individual residing at address 337 Alexandria Drive, Macon, GA 31210. Plaintiff is African-American.

2. Defendant, Aronimink Golf Club ("Aronimink"), is a corporation or other entity that maintains a principal place of business, usual place of business and/or registered office at 3600 St. Davids Road, Newtown Square, PA 19073.

### JURISDICTION

3. This is a civil action arising under the laws of the United States and is brought pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. §1981; and, 42 U.S.C. §1981a. This Court also has jurisdiction of the claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343.

4. This Court also has pendent and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367. These claims are brought pursuant to the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA").

## VENUE

5. Defendant transacts business and is found in this district.

## FACTUAL BACKGROUND

6. Hughes began working for Aronimink on or about May 5, 2019 as the Chef de Cuisine.

7. Hughes immediate supervisor was Executive Chef, Jim Byrnes ("Byrnes") (Caucasian)

8. On or about November 25, 2020, Hughes had a conversation with Clubhouse Manager, Stephen Feuz ("Feuz") (Caucasian), wherein Fuez told Hughes that the plan going forward was for Hughes to be offered the executive chef position after the retirement of Byrnes which was expected to be announced in the first quarter of 2021.

9. On or about December 13, 2020, Hughes put in for his earned vacation time.

10. On December 15, 2020, Feuz informed Hughes that he could not take all of the requested vacation and that he would not be allowed to carry over the unused vacation time into 2021.

11. Later that same day Hughes met with General Manager, John Cunningham ("Cunningham") (Caucasian), and Feuz to discuss this issue.

12. On December 16, 2020, Cunningham refused to speak or make eye contact with Hughes.

13. Later that evening Hughes received a telephone call from Feuz asking why Cunningham received a call from Club President, Bill Barry ("Barry") (Caucasian).

14. Barry was apparently contacted by other another club member after that club member asked Hughes if everything was okay and Hughes told the club member that he was being treated differently than all of the other managers who were Caucasian, since Hughes was being denied the opportunity to take the vacation time he had earned.

15. On the morning of December 17, 2020, Feuz called Hughes at home to ask how much vacation time Hughes believed he was owed.

16. Later that day Feuz gave Hughes the vacation forms to sign and approved Hughes' vacation request.

17. On December 19, 2020, Hughes was called into a meeting with Cunningham and Feuz and presented with a mediocre performance review.

18. During the review meeting Cunningham threatened Hughes' employment by discussing the termination of a former employee.

19. Hughes subsequently learned via documents posted on the company share drive that he was no longer on track to be offered the executive chef position and that Aronimink was planning to terminate his employment.

20. Further, Feuz's attitude towards Hughes changed; he stopped speaking with Hughes; would not acknowledge Hughes; and, generally created a hostile work environment.

21. On January 29, 2021, due to the continuing retaliatory hostile work environment and knowing that he was no longer on track to be executive chef and was instead going to be terminated, Hughes submitted his resignation to be effective February 10, 2021.

22. On January 30, 2021, Hughes met with Cunningham and Feuz wherein Hughes explained the reasons for his resignation, including the documents that were on the share drive.

23. Neither disputed that Hughes was no longer on track to be promoted or that he was going to be terminated; instead Feuz told Hughes that he wasn't supposed to see the documents.

24. Feuz then told Hughes to work the remainder of his notice time remotely.

25. After the conversation the documents in question were removed from the share drive.

26. Aronimink subsequently hired John Ferguson (Caucasian) to replace Byrnes as executive chef.

27. Hughes contends that he was/is as or more qualified than Ferguson for the executive chef position.

28. At all times material hereto Aronimink was acting by and through its duly appointed employees, agents, servants and/or workmen who were acting within the course and scope of said agency and/or employment relationship with the express and/or implied permission of the Aronimink.

29. Hughes received a "Right to Sue" letter on or about September 3, 2021.  (*See,* letter from EEOC dated September 3, 2021 attached hereto as Exhibit "A.")

### COUNT - I
### PLAINTIFF v. DEFENDANT
### PLAINTIFF'S CLAIMS UNDER TITLE VII

30. Hughes hereby incorporates by reference all of the allegations contained in paragraphs 1 through 29 inclusive as fully as though the same were herein set forth at length.

31. Aronimink's conduct, as outlined above, including, but not limited to, treating Hughes differently than his Caucasian co-workers and/or not offering Hughes the executive chef position constitutes unlawful race discrimination in violation of Title VII.

32. Aronimink's conduct, as outlined above, including, but not limited to, creating a hostile work environment after Hughes engaged in protected conduct, giving Hughes a mediocre performance review after he engaged in protected conduct, threatening Hughes with termination and/or informing Hughes and/or allowing Hughes to believe that he was going to be terminated after he engaged in protected conduct, and/or not offering Hughes the executive chef position after he engaged in protected conduct constitutes unlawful retaliation in violation of Title VII.

33. Further, Aronimink's conduct, as outlined above, constitutes constructive discharge in violation of Title VII.

34. As a direct result of Aronimink's unlawful and wrongful conduct, Hughes has suffered economic harm including, *inter alia*, lost wages and benefits.

35. In addition, Aronimink's discriminatory and/or retaliatory conduct has caused Hughes emotional distress.

36. Further, said discrimination and retaliation was willful, intentional, outrageous, and/or in flagrant disregard of the provisions of Title VII thereby entitling Hughes to an award of punitive damages.

### COUNT - II
### PLAINTIFF v. DEFENDANT
### PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §1981

37. Hughes hereby incorporates by reference all of the allegations contained in paragraphs 1 through 36 inclusive as fully as though the same were herein set forth at length.

38. Aronimink's conduct, as outlined above, including, but not limited to, treating Hughes differently than his Caucasian co-workers and/or not offering Hughes the executive chef position constitutes unlawful race discrimination in violation of 42 U.S.C. §1981.

39. Aronimink's conduct, as outlined above, including, but not limited to, creating a hostile work environment after Hughes engaged in protected conduct, giving Hughes a mediocre performance review after he engaged in protected conduct, threatening Hughes with termination and/or informing Hughes and/or allowing Hughes to believe that he was going to be terminated after he engaged in protected conduct, and/or not offering Hughes the executive chef position after he engaged in protected conduct constitutes unlawful retaliation in violation of 42 U.S.C. §1981.

40. Further, Aronimink's conduct, as outlined above, constitutes constructive discharge in violation of 42 U.S.C. §1981.

41. As a direct result of Aronimink's unlawful and wrongful conduct, Hughes has suffered economic harm including, *inter alia*, lost wages and benefits.

42. In addition, Aronimink's discriminatory and/or retaliatory conduct has caused Hughes emotional distress.

43. Further, said discrimination was willful, intentional, outrageous, and/or in flagrant disregard of the provisions of 42 U.S.C. §1981 thereby entitling Hughes to an award of punitive damages.

**COUNT - III**
**PLAINTIFF v. DEFENDANT**
**PLAINTIFF'S CLAIMS UNDER THE PHRA**

44. Hughes hereby incorporates by reference all of the allegations contained in paragraphs 1 through 43 inclusive as fully as though the same were herein set forth at length.

45. Aronimink's conduct, as outlined above, including, but not limited to, treating Hughes differently than his Caucasian co-workers and/or not offering Hughes the executive chef position constitutes unlawful race discrimination in violation of the PHRA.

46. Aronimink's conduct, as outlined above, including, but not limited to, creating a hostile work environment after Hughes engaged in protected conduct, giving Hughes a mediocre performance review after he engaged in protected conduct, threatening Hughes with termination and/or informing Hughes and/or allowing Hughes to believe that he was going to be terminated after he engaged in protected conduct, and/or not offering Hughes the executive chef position after he engaged in protected conduct constitutes unlawful retaliation in violation of the PHRA.

47. Further, Aronimink's conduct, as outlined above, constitutes constructive discharge in violation of the PHRA.

48. As a direct result of Aronimink's unlawful and wrongful conduct, Hughes has suffered economic harm including, *inter alia*, lost wages and benefits.

49. In addition, Aronimink's discriminatory and/or retaliatory conduct has caused Hughes emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff seeks damages to the extent that he has been harmed by defendant's unlawful conduct and specifically prays that the Court grant the following relief:

A. Award to plaintiff back salary, wages, fringe benefits, front pay, and other allowable damages, together with prejudgment interest pursuant to Title VII, 42 U.S.C. §1981 and the PHRA;

B. Award to plaintiff compensatory damages pursuant to Title VII, 42 U.S.C. §1981 and the PHRA;

C. Award to plaintiff punitive damages pursuant to Title VII and 42 U.S.C. §1981;

D. Award to plaintiff and his counsel attorney's fees, costs and disbursements pursuant to Title VII, 42 U.S.C. §1981 and the PHRA; and,

E. Any other equitable or legal relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.

                                              Respectfully Submitted,

                                              By: /s/ Bruce Preissman
                                                   Bruce Preissman
                                                   I.D.# 69996
                                                   1032 Mill Creek Drive, Suite 204
                                                   Feasterville, PA  19053
                                                   (215) 322-6990
                                                   Attorney for Plaintiff